UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| MOUHAMADOU M. SOW, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:08-0983-RLY-JMS |
| | ) | |
| FORTVILLE POLICE DEPARTMENT, | ) | |
| MCCORDSVILLE POLICE | ) | |
| DEPARTMENT, and OFFICER MICHAEL | ) | |
| FULLER (in his individual and official | ) | |
| capacities), | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Mouhamadou M. Sow ("Plaintiff"), is from Dakar, Senegal.  He was

arrested on November 19, 2007, for attempting to pass a counterfeit money order at the

Fortville Post Office.  After the charges were dismissed, Plaintiff brought the present

lawsuit under 42 U.S.C. § 1983 ("Section 1983"), 42 U.S.C. § 1985 ("Section 1985"), and

42 U.S.C. § 1986 ("Section 1986"), as well as various Indiana state laws.  The gravaman

of Plaintiff's federal claims is the allegation that he was arrested without probable cause,

that his arrest was motivated by his race, that the Defendants engaged in a conspiracy

against him, and that he was subjected to unreasonable use of force.  As far as his state

law claims are concerned, Plaintiff alleges intentional infliction of emotional distress,

negligent infliction of emotional distress, negligent supervision, assault and battery.  The

United States of America and two postal employees, Lynette Hertzer ("Hertzer") and

Brenda Rains ("Rains"), previously filed a motion to dismiss, which the court granted on December 17, 2008.

The Fortville Police Department ("FPD") and Officer Michael Fuller ("Officer Fuller") (collectively "Defendants") now move for summary judgment.  For the reasons set forth below, the Defendants' motion is **GRANTED**.

## I.      Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Some alleged factual dispute that does not rise to a genuine issue of material fact will not alone defeat a summary judgment motion.  *Id.* at 247–48.

In deciding whether a genuine issue of material fact exists, the court views the evidence and draws all inferences in favor of the nonmoving party.  *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).  However, when a summary judgment motion is made and supported by evidence as provided in Rule 56(c), the nonmoving party may not rest on mere allegations or denials in its pleadings but "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).

## II.    Background

1.    On October 22, 2007, Plaintiff bought two money orders from the Eastland Post Office in Columbus, Ohio.  (Defendants' Ex. B, Complaint ("Complaint") ¶ 21).

2.    Plaintiff subsequently presented a $1,000 money order to Fortville Post Office employees Hertzer and Rains.  They refused to cash the instrument, advising Plaintiff that it was fake, in that the watermark did not resemble Benjamin Franklin, the visage present on all official money orders, but rather, Jesus Christ. (Defendants' Ex. A, Deposition of Mouhamadou M. Sow ("Plaintiff Dep.") at 41, 42, 45, 46; Defendants' Ex. C, Affidavit of Michael P. Fuller ("Fuller Aff.") ¶ 6).

3.    The employees also concluded that the zip code on the money order did not match the location where it was purportedly purchased.  (Fuller Aff. ¶ 6; Defendants' Ex. B, Voluntary Statement of Lynette Hertzer ("Hertzer Statement").

4.    While Rains was telling Plaintiff that they could not cash the money order, Hertzer searched the parking lot to obtain a description of his vehicle for the police. (Fuller Aff. ¶ 8; Hertzer Statement).

5.    Hertzer then called the FPD "to report [her] suspicions" and Hancock County dispatch issued a radio transmission advising of the above facts.  (Defendants' Ex. D, Deposition of Michael R. Schwamberger ("Schwamberger Dep.") at 15; Fuller Aff. ¶ 4; Hertzer Statement).

6.    Officer Michael Fuller ("Officer Fuller") of the FPD received this transmission and soon arrived at the post office.  (Fuller Aff. ¶¶ 4, 6).

3

7.      One of the postal employees informed Officer Fuller that an individual had attempted to pass a $1,000 money order that she believed was fake.  (Fuller Aff. ¶ 5).  She further advised Officer Fuller that she had inspected the money order and concluded that it was counterfeit, since the watermark did not contain an image properly resembling Benjamin Franklin, but one appearing to be Jesus Christ.  (*Id.* ¶ 6; Schwamberger Dep. at 24).

8.      The employee said the subject had just left the building and was traveling to the McCordsville Post Office to attempt to cash the money order.  (Fuller Aff. ¶ 7).

9.      Officer Fuller advised the McCordsville Police by radio of the above, and gave them a description of the van Plaintiff was operating, which had been provided by the Fortville postal employees.  (*Id.* ¶ 8; Schwamberger Dep. at 15, 16).

10.     McCordsville Police Officer Michael Schwamberger ("Officer Schwamberger") soon stopped a vehicle matching the description at CR 700 N. 600 West in McCordsville.  (Defendants' Ex. F, Affidavit of Michael Schwamberger ("Schwamberger Aff.") ¶ 7; Schwamberger Dep. at 13, 17; Fuller Aff. ¶ 9).

11.     The vehicle had a temporary license plate behind a tinted black window and its driver produced a Florida driver's license bearing a New York address.  No registration was produced.  (Plaintiff Dep. at 37, 48-49; Schwamberger Dep. at 17, 19, 20, 21, 22; Fuller Aff. ¶ 12; Schwamberger Aff. ¶ 9).

12.     Officer Fuller arrived at the scene and spoke with the driver, who identified himself as Plaintiff and produced the subject money order that he had attempted to

4

cash in Fortville.  (Fuller Aff. ¶ 10; Schwamberger Dep. at 21).

13.  Officer Fuller and Officer Schwamberger both inspected the money order and concluded that the watermark did not resemble Benjamin Franklin, but Jesus Christ.  (Fuller Aff. ¶ 11; Schwamberger Dep. at 24, 25; Schwamberger Aff. ¶¶ 14, 21).

14.  The officers asked Plaintiff for a receipt for the money order and he was unable to produce one.  (Fuller Aff. ¶ 11; Plaintiff Dep. at 59, 60, 137, 138).

15.  He did produce a backpack full of other money order receipts, the Florida driver's license, and several overseas identification cards.  (Plaintiff Dep. at 121, 138; Fuller Aff. ¶ 12; Schwamberger Aff. ¶ 11).

16.  During the stop, Officer Fuller called post office headquarters in Baltimore, Maryland, and was informed the serial numbers he read to them over the phone – 11203348601 – were not in a format used or recognized by the United States Postal Service ("USPS").  (Fuller Aff. ¶ 13; Plaintiff Dep. at 53, 55, 58, 59; Schwamberger Aff. ¶ 13).

17.  Officer Fuller then called Craig Jones ("Inspector Jones"), the postal inspector in Indianapolis, who likewise informed him the serial numbers – 11203348601 – were not in a format used or recognized by the USPS.  (Fuller Aff. ¶¶ 14, 15).

18.  Inspector Jones also informed Officer Fuller that the USPS uses only the image of Benjamin Franklin in their money order watermarks.  He advised Officer Fuller the money order was fake.  (*Id*. ¶¶ 15, 16).

19.     Plaintiff told Officer Fuller that he purchased the money order in Columbus, Ohio.
        (*Id*. ¶ 18).

20.     Plaintiff then gave Officer Fuller a $500 money order and receipt that he
        purchased in Columbus, Ohio, on the same day and at the same time as the subject
        $1,000 money order.  (Plaintiff Dep. at 58).

21.     Officer Fuller confirmed to Plaintiff that the $500 money order was purchased at
        the same time, on the same date, and at the same post office.  (*Id*. at 58-59).
        However, Officer Fuller did not contact the Columbus, Ohio, post office.
        (Plaintiff's Ex. 6, Deposition of Michael Fuller ("Fuller Dep.") at 32).

22.     Officer Fuller contacted Jerry Bean, Chief Deputy Prosecutor for Hancock County
        ("Deputy Prosecutor Bean").  (Fuller Aff. ¶ 20; Schwamberger Dep. at 26).

23.     Deputy Prosecutor Bean advised Officer Fuller to arrest Plaintiff for Forgery and
        transport him to the Hancock County Jail.  (Fuller Aff. ¶ 21).

24.     Plaintiff was read his Miranda rights and handcuffed.  (Plaintiff Dep. at 138-39;
        Fuller Aff. ¶¶ 22, 23; Schwamberger Dep. at 31, 32, 36; Schwamberger Aff. ¶¶ 16,
        17).

25.     Plaintiff testified that Officer Fuller and Officer Schwamberger pushed him into
        the police vehicle, and that, as a consequence, he hit his head on the door.
        (Plaintiff Dep. at 73-74).

26.     Officer Fuller and Officer Schwamberger then took Plaintiff and the money order
        to the post office in McCordsville. On the way there, Plaintiff complained to

Officer Fuller that the handcuffs were too tight and asked him to loosen them.

Officer Fuller refused.  (Plaintiff Dep. at 75-76, 86, 123, 133-34).

27. The McCordsville postal employees were also of the opinion that the money order
was counterfeit because the watermark did not depict Benjamin Franklin.  (Fuller
Aff. ¶ 25; Schwamberger Dep. at 33, 37).

28. The McCordsville postal employees also provided Officer Fuller and Officer
Schwamberger an official money order, which they compared to the suspect
money order.  Both concluded that the watermarks were different.  (Schwamberger
Dep. at 38-39; Schwamberger Aff. ¶ 21; Fuller Aff. ¶ 26).

29. Plaintiff was then transported to the Hancock County Jail.  (Fuller Aff. ¶ 27).

30. Plaintiff did not complain to jail officials or receive treatment at the jail regarding
the bump on his head and his handcuff pain.  (Plaintiff Dep. at 76, 86, 91, 113,
121-26, 133, 141).

31. Officer Fuller returned to the Fortville Post Office and obtained written statements
under oath from Hertzer.  (*Id.* ¶ 28; Hertzer Statement).

32. After Plaintiff was released from the Hancock County Jail, he found the receipt for
the subject $1,000 money order and hired counsel.  (Plaintiff's Ex. 4, Affidavit of
Mouhamadou M. Sow ¶ 8).

33. The Marion County postal inspector later confirmed that the $1,000 money order
was valid, and the prosecutor assigned to Plaintiff's criminal case dismissed the
charge.  (*Id.*).

34.     Officer Fuller and Officer Schwamberger received training in racial profiling and

harassment at the Indiana Law Enforcement Academy.  (Fuller Aff. ¶ 3;

Schwamberger Aff. ¶ 2).

### III.     Discussion

#### A.      Section 1983 Claims

In Count I of Plaintiff's Complaint, he brings a number of federal Section 1983

claims against the FPD and Officer Fuller.  Section 1983 provides a private cause of

action against a person, who acting under color of state law, deprives an individual of any

"rights, privileges, or immunities secured by the Constitution and laws" of the United

States.  *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (quoting 42 U.S.C. § 1983).

"Section 1983 is not itself a font for substantive rights; instead it acts as an instrument for

vindicating federal rights conferred elsewhere."  *Spiegel v. Rabinovitz*, 121 F.3d 251, 254

(7th Cir. 1997).

#### 1.      False Arrest

Although not specifically pled in his Complaint, the essence of Plaintiff's Section

1983 claim is that he was arrested without probable cause.  The existence of probable

cause is an absolute defense to a claim of false arrest under Section 1983.  *Montano v.

City of Chicago*, 535 F.3d 558, 568 (7th Cir. 2008); *Kelly v. Myler*, 149 F.3d 641, 646

(7th Cir. 1998) ("An essential predicate to any § 1983 claim for unlawful arrest is the

absence of probable cause.");  *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir.

1989) ("[T]he existence of probable cause for arrest is an absolute bar to Section 1983

claim for unlawful arrest, false imprisonment, or malicious prosecution.").

Probable cause exists when an officer reasonably believes, in light of the facts and circumstances within the knowledge of the arresting officers at the time of the arrest, that the suspect had committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The test is an objective one, which evaluates whether probable cause existed on the facts as they appeared to a reasonable police officer, even if that belief is ultimately found to be incorrect. *Kelly*, 149 F.3d at 646. While probable cause requires more than bare suspicion, it need not be based on evidence which is sufficient to support a conviction. *Maltby v. Winston*, 36 F.3d 548, 556 (7th Cir. 1994). In fact, it is not even necessary to show that the officer's belief is more likely true than false. *Id*. (quoting *Hughes v. Meyer*, 880 F.2d 967, 969 (7th Cir. 1989), *cert. denied*, 495 U.S. 931 (1990)).

In the formation of probable cause, an officer can reasonably rely upon information and observation from eyewitnesses and fellow police officers. *Pasiewicz v. Lake County Forest Preserve*, 270 F.3d 520, 524 (7th Cir. 2001); *Gerald M. v. Conneely*, 858 F.2d 378, 381 (7th Cir. 1988) (quoting *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir. 1986), *cert. denied*, 481 U.S. 1028 (1987)). When police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible. *Pasiewicz*, 270 F.3d at 524 (citing *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1247 (7th Cir. 1994)).

In the present case, Officer Fuller relied in part on the testimony of two eyewitnesses, Hertzer and Rains, who reported that Plaintiff was attempting to cash a counterfeit $1,000 money order.  Both concluded that the money order was fake because the watermark did not resemble Benjamin Franklin. Officer Fuller continued his investigation by comparing Plaintiff's money order with an official one, and found dissimilarities.  Officer Fuller contacted two postal officials in two locations, and both advised him that the money order was fake.  In addition, Plaintiff was unable to provide a receipt for the $1,000 money order.  Officer Fuller contacted the Hancock County Prosecutor's Office and was advised to arrest Plaintiff for Forgery.

To the extent Plaintiff claims that Officer Fuller did not conduct an adequate investigation because he did not contact the Columbus, Ohio post office where Plaintiff purchased the money order, Plaintiff's claim necessarily fails.  Once probable cause is established, an officer is not required to seek out exculpatory evidence.  *Forman v. Richmond Police Dep't*, 104 F.3d 950, 962 (7th Cir. 1997) (quoting *Eversole v. Steele*, 59 F.3d 710, 718 (7th Cir. 1995).  "The inquiry is whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation." *Kelley*, 149 F.3d at 647 (citing *Gramenos*, 797 F.2d at 439).  Accordingly, the court finds that there was ample evidence providing probable cause to arrest Plaintiff, and thus, his false arrest claim must necessarily fail.

### 2.    Excessive Force

Plaintiff also brings a claim for excessive force against Officer Fuller.  All claims

that law enforcement officers have used excessive force in the course of an arrest,

investigatory stop, or other seizure are analyzed under the Fourth Amendment and its

"reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Bell v. Irwin*,

321 F.3d 637, 639 (7th Cir. 2003).  The "reasonableness" of the use of force is judged

from the perspective of a reasonable officer on the scene, rather than with the 20/20

vision of hindsight. *Bell*, 321 F.3d at 639 (quoting *Graham*, 490 U.S. at 396).  The right

to make an arrest or an investigatory stop necessarily carries with it some degree of

physical coercion to effect it.  *Graham*, 490 U.S. at 396.  With these principles in mind,

the court now turns to an analysis of Plaintiff's claims.

### a.  Handcuffs

Plaintiff contends that Officer Fuller used excessive force against him by placing

the handcuffs on his wrists too tightly and by refusing to loosen them.  Plaintiff does not

support this claim with argument or citation to authority.  At any rate, Plaintiff's claim is

foreclosed by the Seventh Circuit's opinion in *Tibbs v. City of Chicago*, 469 F.3d 661 (7th

Cir. 2006).  In that case, following the plaintiff's arrest, the plaintiff complained that his

handcuffs were too tight twice, once during the short ride to the police station, and once

to an unknown officer at the police station.  *Id*. at 663.  In addition, the facts reflected that

the officers removed his handcuffs approximately twenty-five minutes after the plaintiff

arrived at the police station, the plaintiff's wrists were red for approximately one and a

half days, and the plaintiff received no medical care for wrist pain.  *Id*.  Given such "mild

allegations," the Seventh Circuit held that Plaintiff's Fourth Amendment rights were not

11

violated.  *Id.* at 666.

Plaintiff's injuries were even less severe than the plaintiff's injuries in *Tibbs*.

Indeed, Plaintiff complained about his handcuffs only once.  He did not experience any

symptoms or seek medical treatment during his two-day stay at the Hancock County Jail,

nor at any time thereafter.  Accordingly, the court finds that Plaintiff's excessive force

claim based on the tight fit of the handcuffs fails on the merits.

### b.     Bumped Head

Plaintiff also points to the bump on his head as evidence of Officer Fuller's use of

excessive force.  With respect to Plaintiff's claim, "'[n]ot every push or shove, even if it

may later seem unnecessary in the peace of a judge's chambers, violates the Fourth

Amendment.'"  *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033

(2d Cir. 1973), *cert. denied*, 414 U.S. 1033 (1973)).  "Determining whether the use of

force used to effect a particular seizure is reasonable under the Fourth Amendment

requires a careful balancing of the nature and quality of the intrusion on the individual's

Fourth Amendment interests against the counterveiling governmental interests at stake."

*Id*. (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1989) (internal quotations omitted)).

In the case at bar, Plaintiff did not complain to any officer about bumping his head.

Nor did he complain to jail officials of any such injury or receive medical treatment for

the same.  Thus, while "the officers' tactics in placing [Plaintiff] in the police car may

have been clumsy or imprudent, [] they were not objectively unreasonable."  *Brant v.*

*Volkert*, 72 F. App'x 463, 466 (7th Cir. 2003) (citing *California v. Hodari D*., 499 U.S.

621, 626 (1991); *Graham*, 490 U.S. at 396)).  Accordingly, the court finds that Plaintiff's excessive force claim based on the bump to his head fails on the merits.

### 3.    Equal Protection/Racial Profiling Claim

Plaintiff also alleges that he was the victim of racial profiling.  Claims alleging racial profiling are analyzed under the Equal Protection Clause of the Fourteenth Amendment.  *Chavez v. Ill. State Police*, 251 F.3d 612, 635 (7th Cir. 2001) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).  To establish a violation of the Equal Protection Clause, the plaintiff "must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose."  *Id*. (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272-74 (1979)); *see also Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996) ("In order to establish liability under § 1983, [the plaintiff] must show that the defendants acted with a nefarious discriminatory purpose, and discriminated against him based on his membership in a definable class.") (internal citations omitted)).  A showing that an officer was negligent will not suffice.  *Nabozny*, 92 F.3d at 454.  The plaintiff must show that the officer acted either intentionally or with deliberate indifference.  *Id*. at 454 (quoting *Archie v. City of Racine*, 847 F.2d 1211, 1219 (7th Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989)).

There is no evidence of record to support this claim.  At best, Plaintiff has shown that he, an African American man, was arrested by two white officers in a predominately white community.  That is simply not enough to sustain his burden.  Accordingly, Plaintiff's equal protection claim must fail.

###### B.   Section 1985/1986 Conspiracy Claim

In Counts II and III, Plaintiff brings claims under Section 1985 and 1986.  Section 1985(3) creates a cause of action for victims of conspiratorial denial of civil rights.  To prevail on a Section 1985(3) claim, the plaintiff must establish: "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens."  *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002) (citing *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir. 1999)).  "There must be some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action."  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  Moreover, "as a threshold matter," the absence of any underlying violation of the plaintiff's rights precludes the possibility of the plaintiff succeeding on a conspiracy count.  *Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999).

Here, Plaintiff argues that "Officer Fuller spoke with these individuals [Hertzer and Rains] and together initiated an action to deprive [Plaintiff] of his constitutional rights."  (Plaintiff's Response at 26-27).  He reasons that "Hertzer, Rains, and Officer Fuller were instinctively guided by racial animus and their action [sic] were predicated on the fact that [Plaintiff] was black and . . . was in a predominately white town attempting to cash a $1,000 money order."  (*Id.* at 27).  Plaintiff's claim is based on nothing but conjecture and speculation.  There is no evidence in the record that these individuals

14

conspired to deprive Plaintiff of his constitutional rights.  In fact, there is no underlying

constitutional violation.  Accordingly, Plaintiff's Section 1985(3) claim must be

dismissed.

Section 1986 provides a cause of action for neglect or refusal to prevent the

commission of acts prohibited by Section 1985.  No claim lies under Section 1986 in the

absence of a claim under Section 1985.  *Grimes v. Smith*, 776 F.2d 1359, 1363 n.4 (7th

Cir. 1985); *Williams v. St. Joseph Hosp.*, 629 F.2d 448, 452 (7th Cir. 1980).  Accordingly,

Plaintiff's Section 1986 claim must also be dismissed.

### C.      Fortville Police Department

In their motion, Defendants contend that Plaintiff sued the wrong party.  Instead of

filing suit against the FPD, Plaintiff should have filed suit against the Town of Fortville.

The court agrees.  The FPD is not a proper party because it lacks the capacity to sue or be

sued.  "A city's police department is merely a vehicle through which the city government

fulfills its policy functions and is not a proper party defendant."  *Jones v. Bowman*, 694 F.

Supp. 538, 544 (N.D. Ind. 1988).  Therefore, the FPD must be dismissed from this suit.

### D.      State Law Claims

Plaintiff also brings the following state law claims: (1) intentional infliction of

emotional distress, (2) negligent infliction of emotional distress, (3) negligent

supervision, (4) assault, (5) battery, and (6) vicarious liability.  Defendants respond that

they are immune from suit under the Indiana Tort Claims Act.  The Indiana Tort Claims

Act ("ITCA") provides immunity from liability to governmental employees acting within

the scope of their employment if a loss results from "[t]he adoption and enforcement of or failure to adopt or enforce a law  . . . unless the act of enforcement constitutes false arrest or false imprisonment." IND. CODE § 34-13-3-3(8).  Despite the number of state law claims at issue in his Complaint, Plaintiff responds to only one – his claim for negligent supervision (which is really a failure to train claim).  Plaintiff claims that the FPD negligently failed to train Officer Fuller "regarding unlawful practices and conduct grounded in racial profiling and stereotypes."  (Complaint ¶ 76).

A failure to train claim is a claim against a municipality.  *See Dunn v. City of Elgin*, 347 F.3d 641, 645-46 (7th Cir. 2003).  In this case, the proper party to sue would be the Town of Fortville, and not the FPD.  Yet, as noted above, the Town of Fortville is not a party to this lawsuit.  Moreover, there is no merit to this claim because: (1) there is no evidence that Officer Fuller engaged in racial profiling at the time that he investigated and arrested Plaintiff; and (2) Officer Fuller was in fact trained in racial profiling at the police academy.  Accordingly, Plaintiff's negligent training claim, and the balance of his state law claims, must be dismissed.

16

## IV.    Conclusion

For the reasons set forth above, the court **GRANTS** Defendants' Motion for

Summary Judgment (Docket # 53).


**SO ORDERED** this  13th   day of April 2010.


RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Swaray Edward Conteh
contehlaw@att.net

Kirk A. Horn
MANDEL HORN MCGRATH & REYNOLDS, P.C.
khorn@mhmrlaw.com

Kyle A. Jones
NORRIS CHOPLIN & SCHROEDER LLP
kjones@ncs-law.com